[Cite as *State v. Blake*, 2026-Ohio-1769.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO, :

    Plaintiff-Appellee, :

    v. :

                                        No. 115430

GEORGE BLAKE, :

    Defendant-Appellant. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 14, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-696649-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Lisa J. Turoso, Assistant Prosecuting Attorneys, *for appellee.*

Eric M. Levy, *for appellant.*

MICHAEL JOHN RYAN, P.J.:

{¶ 1} Defendant-appellant George Blake appeals his guilty plea and sentence. For the following reasons, we affirm.

{¶ 2} In 2024, appellant was charged in relation to an attack on his former girlfriend, E.D. Appellant was charged as follows: Counts 1 and 2, felonious assault in violation of R.C. 2903.11(A)(1); Count 3, strangulation in violation of R.C. 2903.18(B)(2); Count 4, strangulation in violation of R.C. 2903.18(B)(3); Counts 5 and 6, domestic violence in violation of R.C. 2919.25(A); and Count 7, cruelty to companion animals in violation of R.C. 959.131(B).

{¶ 3} While out on bond, appellant testified positive for cocaine and alcohol multiple times. He also pleaded guilty to attempted assault in a separate case and was sentenced to 90 days in jail with 76 days suspended and 14 days of jail-time credit as well as one- and one-half years of community control sanctions. *See Cleveland v. Blake*, Cleveland M.C. No. 2024-CRB-005738.

{¶ 4} In June 2025, appellant entered a change of plea and pleaded guilty in this case to Count 1 (felonious assault), Count 4 (strangulation), Count 5 (domestic violence), and Count 7 (cruelty against companion animal). The trial court accepted appellant's plea, nolled the remaining counts, and referred him for a presentence-investigation report.

{¶ 5} At the sentencing hearing, the State introduced body-camera videos that showed E.D. receiving medical care following the attack, photographs, and a partial report from a sexual assault nurse examiner. The State requested restitution in the amount of $436.32 for the victim's mobile phone, which appellant broke during the assault.

{¶ 6} E.D. described the attack and its aftereffects. She stated that the incident impacted her social interactions with family and friends, resulted in panic attacks, caused an exacerbation of her preexisting autoimmune disease, and left her homeless and without access to money or her identification. E.D.'s injuries took months to heal, and, because of her injuries, E.D. had constant headaches, was unable to sleep, and had difficulty eating and drinking.

{¶ 7} Appellant admitted that he had hit E.D., and defense counsel acknowledged that appellant's actions had a serious, lasting impact on her. Defense counsel also acknowledged appellant's underlying addiction issues and indicated that appellant's last three alcohol and drug tests were negative. Defense counsel stated that appellant attended AA meetings and participated in mental-health and anger-management classes.

{¶ 8} The trial court stated that it considered the record, the statements made during the sentencing hearing, the presentence-investigation report, and the plea negotiations. The court ordered restitution in the amount of $436.32 for the victim's cell phone. Defense counsel did not object to the restitution amount.

{¶ 9} The trial court sentenced appellant to seven to ten and one-half years on Count 1, 36 months on Count 4, six months on Count 5, and six months on Count 7. Counts 4, 5, and 7 were ordered to run concurrently to Count 1 for an aggregate sentence of seven to ten and one-half years in prison.

{¶ 10} Appellant raises two assignments of error for our review:

I. The trial court violated the mandates of Criminal Rule 11 and deprived appellant of due process by accepting a guilty plea without advising him of the potential for restitution rendering the plea unknowing and involuntary.

II. Appellant's sentence is not supported by the record and is otherwise clearly and convincingly contrary to law.

{¶ 11} In his first assignment of error, appellant argues that the trial court failed to comply with Crim.R. 11 because the court did not inform him that restitution could be imposed during his plea hearing.

{¶ 12} It is well-established that "[b]ecause a no-contest or guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary." *State v. Dangler*, 2020-Ohio-2765, ¶ 10, citing *Parke v. Raley*, 506 U.S. 20 (1992). Crim.R. 11(C) sets forth certain constitutional and procedural requirements that a trial court must comply with prior to accepting a guilty plea. The Ohio Supreme Court has summarized appellate review of compliance with Crim.R. 11(C) as follows:

> Properly understood, the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Dangler* at ¶ 17.

{¶ 13} Relevant to the instant matter, Crim.R. 11(C)(2)(a) requires the trial court to determine that a "defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved,

and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing."

{¶ 14} R.C. 2929.18(A)(1) provides that "the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section" including, "[r]estitution by the offender to the victim of the offender's crime . . . in an amount based on the victim's economic loss."

{¶ 15} The issue here is whether the trial court's failure to inform appellant that he could be subject to restitution constituted a complete failure such that he did not need to make a showing of prejudice, therefore, his guilty plea was not knowingly, intelligently, and voluntarily made.

{¶ 16} The Ohio Supreme Court has not explicitly defined a trial court's "complete failure to comply" under a Crim.R. 11 analysis. In *Dangler*, the Court determined there was not a complete failure to comply with the maximum sentence portion of Crim.R. 11(C)(2)(a) where the trial court advised the defendant of sex-offender-registration duties but did not inform the defendant of the residential restrictions and community-notification requirements of sex-offender classification. *Dangler* at ¶ 22. In *State v. Sarkozy*, 2008-Ohio-509, the Court found a complete failure to comply with the maximum penalty portion of Crim.R. 11(C)(2)(a) where a trial court failed "to inform the defendant of the mandatory term of postrelease control, which was a part of the maximum penalty," before it accepted the guilty plea. *Id.* at ¶ 22; *see also State v. Jenkins*, 2025-Ohio-

5146 (8th Dist.) (holding that trial court failed to comply with Crim.R. 11(C)(2)(a) when the court failed to mention postrelease control and defendant was subject to mandatory postrelease control).

{¶ 17} Appellant relies on two cases in support of his argument that the lack of an advisement on restitution was a complete failure to advise. These cases, however, support the State's position that the court's failure to advise appellant that he was subject to restitution during the plea colloquy was not a complete failure to comply with Crim.R. 11.

{¶ 18} First, appellant cites *Wilson*, 2015-Ohio-5143 (8th Dist.). In *Wilson*, the appellant argued that his conviction should be reversed because the trial court failed to inform him of restitution at the time of his guilty plea. Restitution was not mentioned until the sentencing hearing, where the victim requested $28,337.86 for unpaid medical bills. The appellant argued that the failure to mention restitution at his plea hearing "rendered his plea less than knowingly, intelligently, and voluntarily made." *Id.* at ¶ 9.

{¶ 19} This court disagreed, finding that because informing a defendant of restitution involved nonconstitutional requirements of Crim.R. 11, this court would consider whether there was substantial compliance with the rule. *Id.*, citing *State v. Veney*, 2008-Ohio-5200, ¶ 14-17. This court proceeded to perform a prejudice analysis and found that the appellant failed to show that he was prejudiced by the court's failure to mention restitution at the Crim.R. 11 plea hearing. *Wilson* at ¶ 11.

{¶ 20} Appellant also relies on *State v. Willard*, 2021-Ohio-2552 (11th Dist.). In *Willard*, the trial court did not mention restitution until the sentencing hearing, during which the police department that was involved in the case requested $14,500 in restitution. The court determined that the department should receive $4,500 in restitution. *Id.* at ¶ 42. The defendant argued that his plea was less than knowingly and voluntarily made because of the court's failure to mention restitution during the plea hearing. The Eleventh District Court of Appeals employed the three-part *Dangler* test and concluded that the trial court did not comply with Crim.R. 11(C)(2)(a). *Willard* at ¶ 86. The court determined, however, that the trial court's noncompliance was not a complete failure to comply with the rule. *Id.* at ¶ 97.

{¶ 21} The *Willard* Court reasoned that R.C. 2929.18(A)(1) provides that a trial court may impose restitution, which indicates a restitution order is discretionary, not mandatory, and a nonprison sanction, therefore, the trial court's error did not excuse the defendant from the requirement to demonstrate prejudice. *Id.* at ¶ 95, 97. The court concluded that finding otherwise would construe *Dangler* broadly and could "result in a defendant being excepted from the prejudice requirement upon a trial court's failure to mention any component of the defendant's potential sentence, even if that component was not actually imposed, was inconsequential, or was demonstratively known." *Willard* at ¶ 96. It also would require "reversal of pleas that would not have been reversed prior to *Dangler*, which would be contrary to the simplicity that the *Dangler* court intended." *Willard* at *id.*

{¶ 22} We agree that the failure to mention restitution during a plea colloquy does not constitute a complete failure to comply with Crim.R. 11. Thus, we move to consider whether appellant showed that he was prejudiced by the trial court's failure to mention restitution during his plea colloquy.

{¶ 23} "'The test for prejudice is whether the plea would have otherwise been made.'" *Willard* at ¶ 98, quoting *Dangler* at ¶ 16. "Prejudice must be established 'on the face of the record.'" *Willard* at *id.*, quoting *Dangler* at ¶ 24.

{¶ 24} In *State v. Olsen*, 2022-Ohio-1402, ¶ 10 (8th Dist.), the trial court mentioned the possibility of restitution at the plea hearing but did not state the amount that could be imposed. The appellant argued that he would have made a different decision about his plea if he had been informed of the financial penalties involved at his plea hearing. *Id.* at ¶ 7. This court found that there was no requirement that the trial court is required to indicate at the plea hearing the amount of restitution that a defendant will be required to pay and that even if such a requirement existed, the defendant was unable to show that he had been prejudiced by the court's failure to advise him of the amount of restitution. *Id.* at ¶ 10.

{¶ 25} In this case, there is nothing in the record that suggests that appellant would not have entered his plea had he been told that he would have to pay restitution or that he was otherwise prejudiced by entering his plea.

{¶ 26} The first assignment of error is overruled.

{¶ 27} In his second assignment of error, appellant argues his sentence was unsupported by the record and contrary to the law because (1) the trial court did not apply R.C. 2929.11 and 2929.12, (2) the trial court imposed restitution without considering his ability to pay, and (3) the court failed to merge allied offenses of similar import.

{¶ 28} An appellate court reviews felony sentences under R.C. 2953.08(G)(2). *State v. Jones*, 2020-Ohio-6729, ¶ 27, citing *State v. Marcum*, 2016-Ohio-1002. Under R.C. 2953.08(G)(2)(b), an appellate court "may increase, reduce, or otherwise modify a sentence . . . or may vacate the sentence and remand the matter . . . for resentencing" if it "clearly and convincingly" finds "[t]hat the sentence is otherwise contrary to law." "A sentence is contrary to law if it falls outside the statutory range for the offense or if the sentencing court fails to consider the purposes and principles of sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12." *State v. Angel*, 2022-Ohio-72, ¶ 8 (8th Dist.), citing *State v. Pawlak*, 2016-Ohio-5926 (8th Dist.).

{¶ 29} R.C. 2929.11 addresses the overriding purposes of felony sentencing. R.C. 2929.12 addresses factors that are to be considered when imposing a sentence. *Jones* at ¶ 18-19. Under R.C. 2929.11(A), the overriding purposes of felony sentencing are to (1) "protect the public from future crime by the offender and others"; (2) "punish the offender"; and (3) "promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local

government resources." Additionally, the imposed sentence must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 30} R.C. 2929.12 provides the sentencing court with the discretion to determine the best way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11 when imposing a sentence. *State v. Bridges*, 2019-Ohio-1769, ¶ 10 (8th Dist.). R.C. 2929.12 sets forth a nonexhaustive list of factors a trial court must consider in determining the seriousness of the offender's conduct and the likelihood of recidivism, including the offender's history of criminal convictions, whether the offender has responded favorably to sanctions previously imposed for criminal convictions, whether the offender has demonstrated remorse, and any other factors relevant to achieving the purposes and principles of sentencing. R.C. 2929.12(A), (D)(2)-(3), and (5).

{¶ 31} Although the sentencing court is required to consider the factors in R.C. 2929.11 and 2929.12, the court is not required to make specific findings on the record regarding its consideration of those factors, even when imposing a more-than-minimum sentence. *Bridges* at ¶ 11, citing *State v. Keith*, 2016-Ohio-5234 (8th Dist.). Indeed, consideration of the factors is presumed unless the defendant affirmatively shows otherwise. *State v. Wright,* 2018-Ohio-965, ¶ 16 (8th Dist.).

{¶ 32} The trial court indicated that it considered the record, statements presented at the sentencing hearing, the presentence-investigation report, and the

plea negotiations. The court also stated that the sentence was based upon the overriding principles and purposes of felony sentencing and to protect the public from future crime and that it considered the need for incapacitation, deterrence, rehabilitation, and restitution.

{¶ 33} The court found the felonious assault and strangulation charges were very serious felonies of the second-degree. The court noted appellant had a long history of assault and domestic violence. The court indicated that it considered the relevant seriousness and recidivism factors and found that a prison sentence was necessary. The court found that the imposed sentence did not demean the seriousness of the crime or the impact on E.D. and was consistent with other similar offenses committed by like offenders. In the corresponding judgment entry, the court incorporated its consideration of all the required factors of the law, and its determination that prison was consistent with R.C. 2929.11.

{¶ 34} Appellant asks this court to substitute its judgment for that of the trial court's regarding how the principles and purposes of sentencing should have been applied and what sentence was appropriate. We are not permitted do so. *See State v. Booker*, 2022-Ohio-3433, ¶ 14 (8th Dist.), quoting *Jones*, 2020-Ohio-6729, at ¶ 42 ("'R.C. 2953.08(G)(2) does not permit an appellate court to conduct a freestanding inquiry[.]'"). The record reflects that the trial court considered the purposes and principles of felony sentencing in R.C. 2929.11 and the sentencing factors in R.C. 2929.12. Further, the sentencing judgment entry indicates the court

"considered all required factors of the law" which this court has found satisfies the rigors of R.C. 2929.11 and 2929.12. *Keith*, 2016-Ohio-5234, at ¶ 11 (8th Dist.).

{¶ 35} Appellant next argues that the trial court erred when it imposed restitution without first considering his ability to pay.

{¶ 36} Effective February 5, 2018, Marsy's Law expanded the rights afforded to crime victims. Relevant to this appeal, Marsy's Law guarantees a victim the right to "full and timely restitution from the person who committed the criminal offense or delinquent act against the victim." Ohio Const., art. I, § 10a(A)(7).

{¶ 37} Marsy's Law does not conflict with restitution statutes, including R.C. 2929.18. *State v. Fuller*, 2023-Ohio-1669, ¶ 16 (8th Dist.), citing *State v. Yerkey*, 2022-Ohio-4298, ¶ 12. This court has also found that a defendant's ability to pay restitution, even where the offender has been found indigent, is irrelevant under Marsy's Law. *Cleveland v. Rudolph*, 2022-Ohio-2363, ¶ 18 (8th Dist.); *Fuller* at ¶ 24.

{¶ 38} Considering the above, the trial court did not err in imposing restitution.

{¶ 39} Appellant next argues that the trial court erred when it failed to merge his felonious-assault, strangulation, and domestic-violence charges for sentencing.

{¶ 40} Appellant failed to raise the issue of merger at trial, so we review the issue for plain error. *State v. Bailey*, 2022-Ohio-4407, ¶ 7, citing *Rogers*, 2015-Ohio-2459, at ¶ 28 (finding that the failure to raise the allied offense issue at the time of sentencing forfeits all but plain error). "Applying the plain-error standard

to an allied offenses argument, the 'accused has the burden to demonstrate a reasonable probability that the convictions are allied offenses of similar import committed with the same conduct and without a separate animus' or import." *State v. Goldsby*, 2025-Ohio-967, ¶ 29 (8th Dist.), quoting *Rogers* at ¶ 21-25.

{¶ 41} R.C. 2941.25, which governs allied offenses of similar import and merger, states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 42} Courts will consider three separate factors to determine whether the offenses are subject to merger:  the import, the conduct, and the animus.  *State v. Bey,* 2025-Ohio-740, ¶ 86 (8th Dist.), citing *State v. Ruff,* 2015-Ohio-995. R.C. 2941.25(A) allows only a single conviction for conduct that constitutes "allied offenses of similar import."  Pursuant to R.C. 2941.25(B), offenses do not merge and a defendant charged with multiple offenses may be convicted of all the offenses if any one of the following is true:  (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.  *Ruff* at ¶ 13, citing *State v. Moss*, 69 Ohio St.2d 515 (1982).

{¶ 43} Appellant pleaded guilty to felonious assault pursuant to R.C. 2903.11(A)(1), which provides in relevant part, that "[n]o person shall knowingly . . . [c]ause serious physical harm to another." Appellant also pled guilty to strangulation under R.C. 2903.18(B)(3), which provides that "no person shall knowingly [c]ause or create a substantial risk of physical harm to another by means of strangulation or suffocation." And appellant pled guilty to domestic violence under R.C. 2919.23(A), which states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶ 44} The record reflects that because of the attack E.D. suffered "breaks" to her face, holes in her lip, facial swelling, a broken and missing tooth, and permanent scars. Appellant also choked E.D. The record demonstrates that E.D. suffered physically as well as psychologically and emotionally from the attack.

{¶ 45} There was no plain error in failing to merge strangulation with the felonious-assault and domestic-violence convictions. Strangulation, which involved appellant choking E.D., was an offense of dissimilar import and did not merge for sentencing purposes. Further, appellant has not demonstrated it was plain error not to merge the felonious-assault and domestic-violence sentences where E.D.'s various injuries could have been perceived as both serious physical harm and physical harm.

{¶ 46} The third assignment of error is overruled.

{¶ 47} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, PRESIDING JUDGE

SEAN C. GALLAGHER, J., CONCURS (WITH SEPARATE OPINION);
TIMOTHY W. CLARY, J., DISSENTS (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, J., CONCURRING:

{¶ 48} I concur fully with the majority decision but write separately to address one aspect of *State v. Willard*, 2021-Ohio-2552 (11th Dist.), that I find troubling. In *Willard*, the panel found that "[t]he existing statutory authority supports a conclusion that restitution is part of the 'maximum penalty involved' under Crim.R. 11(C)(2)(a)." *Willard* at ¶ 78. I believe that conclusion is wrong. While restitution is part of Ohio's sentencing process, I do not believe it should be viewed as a component of the maximum penalty as that phrase has been applied to Crim.R. 11 advisements.

{¶ 49} Restitution is a unique feature of Ohio's criminal justice system. While it can appear punitive, its origin lies in equity. *See generally United States v. Leahy*, 438 F.3d 328, 338 (3d Cir. 2006). Restitution is sometimes viewed as a

court-ordered payment from a convicted offender to a victim, aimed at repairing financial damage and making the victim whole by covering economic losses directly caused by the crime. *See Ohio v. Toler*, 2007-Ohio-6967, ¶ 11-12 (3d Dist.). Many states, including Ohio, have adopted restitution practices by statute. *See generally, Monetary Recoveries for State Crime Victims*, 58 Cleve.St.L.Rev. 819, 832 (2010). To that end, restitution aims to restore victims to their pre-crime financial state.

{¶ 50} Nevertheless, under R.C. 2929.01(EE), restitution is considered part of the sentencing process and is "technically" a criminal penalty because it is referenced as a sanction under R.C. 2929.18(A)(1). Yet, that designation arguably does not make restitution part of the "maximum penalty" for purposes of a Crim.R. 11(C)(2)(a) advisement. As *Willard* recognized, restitution is a discretionary component of sentencing. *Id.* at ¶ 97.

{¶ 51} It is important to recognize that while it is certainly a best practice to give a restitution advisement at the time of the plea, the details about restitution are often unknown at that stage of criminal proceedings. It is at sentencing when the court determines the amount of restitution to be made by the offender. R.C. 2929.18(A)(1). The court may consider an amount recommended by the victim, the presentence-investigation report, estimates or receipts as to the cost of repairing or replacing the property, and other information that often is not available at the time of the plea. Also, the court must conduct a hearing if the amount is disputed as provided under R.C. 2929.18.

{¶ 52} Without question, labeling restitution as a component of the maximum penalty is a slippery slope. It is not beyond possibility that other sanctions under R.C. 2929.18 likewise become part of the "maximum penalty." There could be no end to the details of advisements a trial judge would have to give at the time of a plea. The loss of a discretionary license, required drug treatment, the inability to possess a firearm in the future, or the loss of a job or the opportunity to secure employment in certain fields might all be grounds for challenging whether a plea was voluntarily and knowingly made, but they are not inherent components of a Crim.R. 11(C)(2)(a) maximum-penalty advisement.

{¶ 53} As the Supreme Court of Ohio has previously expressed:

> Crim. R. 11 applies only to the entry and acceptance of the plea. It has no relevance to the exercise of the trial court's sentencing discretion at that stage other than directing the court to proceed with or impose sentencing. Thus, it can hardly be said that the rule imposes upon a trial judge a duty to explain what particular matters he may, at a later date, determine are significant to the exercise of his discretion.

*State v. Johnson*, 40 Ohio St.3d 130, 134 (1988).

{¶ 54} Discounting restitution from the Crim.R. 11(C)(2)(a) advisement requirement does not mean a plea cannot be challenged based on the failure to advise an offender about restitution by asserting generally that the plea was not knowingly, intelligently, or voluntarily entered, rather than a specific challenge to the maximum-penalty advisement. The effect of the failure would depend on the circumstances of each case, and the defendant would still be faced with demonstrating prejudice as outlined in *State v. Dangler*, 2020-Ohio-2765, to

challenge the plea. However, this would not be based on the failure to give a maximum-penalty advisement.

{¶ 55} In any event, I agree with the majority opinion and with the prior decisions of this court that have consistently determined that there is no Crim.R. 11 violation where a court does not advise a defendant about restitution at the time of the plea hearing when a defendant fails to allege or demonstrate prejudice. Additionally, I concur fully with the majority opinion in all other respects.

TIMOTHY W. CLARY, J., DISSENTING:

{¶ 56} I respectfully dissent from the majority and concurring opinions.

{¶ 57} Our inquiry is whether the trial court's advisements during Blake's plea hearing conformed with Crim.R. 11. "The underlying purpose of Crim.R. 11(C) is to convey certain information to a defendant so that he can make a voluntary and intelligent decision regarding whether to plead guilty." *State v. Ballard*, 66 Ohio St. 2d 473, 479-480 (1981). The court's focus when determining if a defendant's plea was knowing and voluntary is "on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *Dangler*, 2020-Ohio-2765 at ¶ 12, citing *State v. Veney*, 2008-Ohio-5200, ¶ 15-16, *State v. Clark*, 2008-Ohio-3748, ¶ 26, and *State v. Miller*, 2020-Ohio-1420, ¶ 19.

{¶ 58} When a criminal defendant seeks a reversal of his conviction because of noncompliance with Crim.R. 11, the general rule is that the defendant must

demonstrate an error in the proceedings and that the error caused prejudice to the defendant. *Dangler* at ¶ 13. However, Ohio courts recognize two exceptions to the general rule where a defendant is entitled to have his plea vacated without showing prejudice: (1) when "a trial court fails to explain the constitutional rights [set forth in Crim.R. 11(C)(2)(c)] that a defendant waives by pleading guilty or no contest" *id.* at ¶ 14, and (2) if there is a complete failure by the trial court to comply with Crim.R. 11(C)(2)(a) or the nonconstitutional aspects of the plea colloquy. *Id.* at ¶ 15, citing *State v. Sarkozy*, 2008-Ohio-509, ¶ 22. Under either circumstance, it is presumed that the defendant entered a plea involuntarily and unknowingly, and no showing of prejudice is required.

{¶ 59} According to the *Dangler* Court, Ohio caselaw has "muddled" the above analysis and unduly complicated "what should be a fairly straightforward inquiry." *Dangler* at ¶ 17. To simplify the analysis, *Dangler* sets forth three questions to address whether a plea was made voluntarily, with an understanding of the waived constitutional and nonconstitutional rights: (1) did the trial court comply with the relevant provision of Crim.R. 11, (2) if the court did not fully comply with the rule, does the failure fall within one of the two exceptions that do not require a showing of prejudice, and (3) if a showing of prejudice is required, has the defendant met that burden. *Id.*

{¶ 60} Here, the issue is the trial court's compliance with Crim.R. 11(C)(2)(a) — specifically, Blake's understanding of the maximum penalty involved — and if the trial court fully or partially complied with the required advisement and whether a

further showing of prejudice was required.  A threshold question is whether restitution is part of the maximum penalty imposed on Blake for his crime.

{¶ 61} R.C. 2929.18(A)(1) requires that the trial court order, in open court, "that full restitution be made to the victim" and "at sentencing, the court shall determine the amount of restitution to be made by the offender."  Restitution constitutes a financial sanction paid by the offender to the victim of the offender's criminal offense.  R.C. 2929.18(A)(1).  "A '[s]anction' means any penalty imposed upon an offender who is convicted of or pleads guilty to an offense, as punishment for the offense[,]" including the imposition of restitution.  R.C. 2929.01(DD).  A sentence has been statutorily defined as "the sanction or combination of sanctions imposed by the sentencing court on an offender who is convicted of or pleads guilty to an offense."  R.C. 2929.01(EE).

{¶ 62} "[I]f a matter of restitution is not apparent from the nature of the plea and charges, there should be some understanding of the restitution parameters at the time of the plea.  Otherwise, whether a plea was truly knowing or voluntary would be subject to question."  *State v. Jones*, 2013-Ohio-2616, ¶ 17 (11th Dist.).  I would find that restitution is a sanction or penalty and a component of an offender's sentence that constitutes part of the "maximum penalty involved" under Crim.R. 11(C)(2)(a).  *See State v. Willard*, 2021-Ohio-2552, ¶ 78-81 (11th Dist.); *see also State v. Wilson*, 2015-Ohio-5143, ¶ 8-12 (8th Dist.) (The decision implies restitution constitutes part of the Crim.R. 11 maximum penalty although the court applied the pre-*Dangler* "substantial compliance" analysis to find there was no evidence to

suggest the defendant would not have entered his plea had he been told he would have to pay restitution.); *State v. Danison*, 2005-Ohio-781, syllabus ("An order of restitution imposed by the sentencing court on an offender for a felony is part of the sentence and, as such, is a final and appealable order.").

{¶ 63} Finding that restitution is part of Blake's maximum penalty, I would also conclude that the trial court's complete failure to mention restitution during Blake's change-of-plea hearing triggered application of the second *Dangler* exception and, accordingly, no finding of prejudice was required before invalidating his plea. A complete failure occurs when a trial court fails to inform a defendant of a part of the maximum penalty before accepting the guilty plea. *Dangler* at ¶ 22. "Or stated differently, a complete failure to comply with Crim.R. 11(C)(2)(a) involves a trial court's complete omission in advising about a distinct component of the maximum penalty." *State v. Fabian*, 2020-Ohio-3926, ¶ 20 (12th Dist.). The trial court completely failed to advise Blake about the possible imposition of restitution, a distinct component of the applicable maximum penalty. Further, the indicted charges of felonious assault, strangulation, and domestic violence did not necessarily indicate that restitution would be or could be a component of Blake's sentence; such information should have been disclosed during his plea hearing.

{¶ 64} The Fifth District Court of Appeals reached a similar conclusion in *State v. Needels*, 2025-Ohio-2967 (5th Dist.). In *Needels*, the trial court's failure to mention the possibility of a fine — even where no financial sanction was ultimately imposed at sentencing — constituted a complete failure to notify the offender of a

component of the maximum sentence as required under Crim.R. 11, and the offender was not required to demonstrate prejudice to be entitled to vacation of his guilty plea.

{¶ 65} Contrary to *Needles*, the *Willard* Court — upon which the majority relies — found that although the trial court made no mention of restitution during the plea colloquy, the second *Dangler* exception did not apply because the trial court completely failed to mention a discretionary rather than mandatory component of the defendant's sentence. *Willard* at ¶ 95. Crim.R. 11(C)(2)(a) requires a trial court to notify a defendant of the maximum penalty involved and does not limit the notice to mandatory components of the sentence. Likewise, *Dangler* does not qualify that a defendant need only be informed of the mandatory components of the maximum penalty. A determination whether the penalties at issue were mandatory or discretionary is irrelevant under the *Dangler* analysis, and I choose not to follow *Willard's* unprecedented conclusions.

{¶ 66} I would have found that the lower court's actions fall within *Dangler's* second exception and, therefore, Blake did not need to show prejudice to invalidate his plea and, therefore, I would sustain Blake's first assignment of error. Having concluded that Blake's guilty plea must be vacated, I would find the remaining assignment of error, which challenges the validity of Blake's sentence, moot.

{¶ 67} For these reasons, I respectfully dissent.